# EXHIBIT A




**CT Corporation**
**Service of Process Notification**
02/26/2024
CT Log Number 545839549

## Service of Process Transmittal Summary

**TO:** Stephen Mahieu, Chief Counsel, Litigation
Kraft Heinz Foods Company
200 E. Randolph St., 75th Floor
Chicago, IL 60601

**RE:** **Process Served in Ohio**

**FOR:** Kraft Heinz Foods Company (LLC) (Assumed Name) (Domestic State: PA)
Kraft Heinz Foods Company (True Name)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

**TITLE OF ACTION:** Re: BRANDON MITCHELL // To: Kraft Heinz Foods Company

**CASE #:** 24CV157

**NATURE OF ACTION:** Employee Litigation - Whistle Blower's Act

**PROCESS SERVED ON:** C T Corporation System, Columbus, OH

**DATE/METHOD OF SERVICE:** By Traceable Mail on 02/26/2024

**JURISDICTION SERVED:** Ohio

**ACTION ITEMS:** CT will retain the current log

Image SOP

Email Notification, Sabrina Hudson sabrina.hudson@us.hjheinz.com

Email Notification, Stephen Mahieu stephen.mahieu@kraftheinz.com

Email Notification, Isabelle Kountz isabelle.kountz@kraftheinz.com

Email Notification, Stephen Mahieu stephen.mahieu@kraftheinz.com

Email Notification, Nakesha Davis nakesha.davis@kraftheinz.com

Email Notification, Caroline Teichner caroline.teichner@kraftheinz.com

Email Notification, Courtney Ofosu courtney.ofosu@kraftheinz.com

**REGISTERED AGENT CONTACT:** C T Corporation System
4400 Easton Commons Way
Suite 125
Columbus, OH 43219
877-564-7529
MajorAccountTeam1@wolterskluwer.com

The information contained in this Transmittal is provided by CT for quick reference only. It does not constitute a legal opinion, and should not otherwise be relied on, as to the nature of action, the amount of damages, the answer date, or any other information contained in the included documents. The recipient(s) of this form is responsible for reviewing and interpreting the included documents and taking appropriate action, including consulting with its legal and other advisors as necessary. CT disclaims all liability for the information contained in this form, including for any omissions or inaccuracies that may be contained therein.


Sandusky County Clerk of Courts
100 N. Park Ave.
Suite 320
Fremont, Ohio 43420
CERTIFIED MAIL
9414 7266 9904 2225 2231 84
FIRST-CLASS
US POSTAGE PITNEY BOWES
ZIP 43420
02 7W
0008029481 FEB 2024
24CV157 MITCHELL, BRANDON VS KRAFT
CT CORPORATION SYSTEM, STATUTORY AGENT
4400 EASTON COMMONS WAY, STE 125
COLUMBUS, OH 43219

**SANDUSKY COUNTY CLERK OF COURTS**

2/21/2024

100 NORTH PARK AVE., SUITE 208
FREMONT, OH 43420
419334-6161

**SUMMONS ON COMPLAINT**

BRANDON MITCHELL
424 SHORT ST.
PORT CLINTON, OH 43452

PLAINTIFF(S)

VS

CT Corporation System, Stat. Agent
4400 Easton Commons Way, Ste 125
Columbus, OH 43219

DEFENDANT(S)

CASE NUMBER: 24CV157

MITCHELL, BRANDON VS KRAFT HEINZ FOODS COMPANY (LLC)

TO THE ABOVE NAMED DEFENDANT:

You have been named a defendant in a complaint filed in the SANDUSKY COUNTY COMMON PLEAS COURT, 100 NORTH PARK AVE., SUITE 208, FREMONT, OH 43420.

A copy of the complaint is attached.

You are required to appear and defend this action by serving an answer to the complaint on the Plaintiff's attorney or on the Plaintiff if he has no attorney. Your answer must be served within twenty-eight (28) days after the service of this summons. A copy of your answer must be also filed with this court within three (3) days after service on the Plaintiff's attorney or the Plaintiff.

The Plaintiff's attorney is:

RICHARD F. PROTIVA ESQ.
25825 SCIENCE PARK DR., SUITE 200
BEACHWOOD, OH 44122
PHONE: (216) 291-4744
FAX: (216) 291-5744

Failure to appear and defend this action will result in a judgment by default being taken against you for the relief demanded in the attached complaint.

**CHRIS A. SCHNEIDER**
**CLERK OF COURTS**

By: [signature] DATE: 2/21/2024

Deputy Clerk

(Rule 4 - 1970 Ohio Rules of Civil Procedure)

SANDUSKY COUNTY
COMMON PLEAS COURT
FILED

2024 FEB 20 AM 10: 1?

CHRIS SCHNEIDER
CLERK

**IN THE COURT OF COMMON PLEAS**
**SANDUSKY COUNTY, OHIO**

| | |
|---|---|
| BRANDON MITCHELL<br>424 Short St.<br>Port Clinton, OH 43452<br><br>Plaintiff,<br><br>v.<br><br>KRAFT HEINZ FOODS COMPANY (LLC)<br>1 PPG Pl Ste 3400<br>Pittsburgh, PA. 15222-5400<br><br>**Serve Also:**<br>Kraft Heinz Foods Company (LLC)<br>200 East Randolph Street.<br>Chicago, IL 60603<br><br>-and-<br><br>CT Corporation System, Statutory Agent<br>4400 Easton Commons Way, Ste 125<br>Columbus, OH 43219<br><br>Defendant. | CASE NO. 24CV157<br><br>JUDGE **Judge Jeremiah S. Ray**<br><br>**COMPLAINT FOR DAMAGES**<br><br>**JURY DEMAND ENDORSED HEREIN** |

State of Ohio, Sandusky County, SS:
I hereby certify that this is a true copy of the original document now on file in my office this 21 day of February 20 24.
CHRIS SCHNEIDER
Sandusky County Clerk of Courts
By [signature]
Deputy Clerk

Plaintiff Brandon Mitchell ("Mitchell"), by and through undersigned counsel, as his Complaint against Defendant Kraft Heinz Foods Company (LLC) states and avers the following:

**PARTIES AND VENUE**

1. Mitchell is a resident of Ottawa County, Ohio.

2. Defendant Kraft Heinz Foods Company (LLC) ("Heinz") is a Pennsylvania limited liability company that owns and operates a facility for the manufacture and packaging of ketchup located at 1200 N 5th St, Fremont, OH 43420.

3. Personal jurisdiction is proper over Heinz pursuant to R.C. 2307.382(A)(1)-(3).





4. Venue is proper pursuant to Civ. R. 3(C)(3), and (6).

5. This Court is a court of general jurisdiction over the claims presented herein, including all subject matters of this Complaint.

## FACTUAL ALLEGATIONS

6. Between March and April 2022, Mitchell discussed the Sanitation Supervisor position with Fernando Gomez ("Gomez"), a recruiter for Heinz.

7. Mitchell was initially uninterested, as the Sanitation Supervisor position would require him to work Saturdays.

8. To entice Mitchell into accepting the Sanitation Supervisor role, Gomez noted that Heinz would pay Mitchell at an hourly rate, in addition to his normal salary, for any hours worked on Saturday or Sunday.

9. When Heinz' offer letter to Mitchell indicated that Mitchell would be exempt from overtime, Mitchell reached out to Gomez again.

10. Gomez clarified that Mitchell's pay arrangements were a local situation that Heinz' form offer letter did not cover.

11. Gomez further stated that Mitchell would need to speak with Christy Harmon ("Harmon"), Heinz' HR Manager, to get the additional hourly pay set up.

12. Heinz first hired Mitchell as Sanitation Supervisor at Heinz' Fremont, Ohio facility on or around July 11, 2022.

13. On that first day of work, Mitchell contacted Harmon about the additional hourly pay.

14. Harmon put Mitchell in touch with Brandi Troutman ("Troutman"), Heinz' Production Supervisor so that Troutman could assist Mitchell in setting up his additional hourly pay.

15. The next day, July 12, 2022, Troutman instructed Brandon on how to submit his hours worked on Saturdays and Sundays.





16. Brandon at all times complied with Troutman's instructions as to how to submit his time.

17. Heinz Fremont facility, particularly lines 6 and 8, was known to have high levels of "micros".

18. "Micros" include such things as lactic acid, yeast, mold, listeria, and insect larva that can contaminate food and cause harm to the end consumer of that food.

19. Listeria is particularly deadly: the Centers for Disease Control notes that an eighth of those infected with listeriosis (a listeria infection) each year die of the infection.

20. Heinz required Mitchell, as Sanitation Supervisor, to clean lines 6 and 8.

21. Mitchell, as Sanitation Supervisor, diligently cleaned lines 6 and 8 as instructed by Heinz in keeping with Heinz' policies and procedures.

22. Micro levels in lines 6 and 8 were independent of how diligently Mitchell and his team cleaned lines 6 and 8.

23. Throughout September and October 2022 Mitchell made numerous written complaints to management at Heinz' Fremont facility regarding the "micros" in ketchup production lines 6 and 8.

24. Mitchell suspected that the high micro levels in lines 6 and 8 were caused somewhere around the homogenizer and the lines leading out from it, as this was the first point in the process where lines 6 and 8 were separated from the rest of production.

25. Micro levels were higher in the mornings when production started.

26. This was consistent with contamination occurring in the lines out of the homogenizer, which would sit idle overnight.

27. Over the next 8 or 9 months, Mitchell repeatedly called for the homogenizer to be fully inspected.







28. However, Heinz management called this deductive solution "too easy" and refused to inspect it as Mitchell requested.

29. After 9 months in which nothing was done about the high micro levels, despite Mitchell's complaints, Heinz had line 6 broken down after a CIP (a self-cleaning process).

30. Despite the fact that the CIP had run, line 6 was still filthy.

31. True and accurate pictures of the still-dirty machinery after the CIP follow:









32. The continued contamination of line 6 after the CIP is consistent with contamination in the line from the homogenizer.

33. On August 8, 2023. Mitchell ordered Joell Hridelburg to run a borescope (an instrument used to obtain images of tight. narrow. or difficult to reach cavities) up the pipes leading out of the homogenizer to line 6.

34. The borescope visually confirmed that contaminants were growing in the stagnant water left sitting in the pipes when they were not actively in use.

35. Mitchell reported his findings verbally and in writing (the "Whistleblower Report") to Lina Galleo, Heinz' Quality Supervisor ("Galleo").

36. Mitchell told Galleo that the line between the homogenizer and lines 6 and 8 needed to be taken apart and replaced in order to alleviate the high micro levels in those lines.

37. Galleo refused to replace the lines.

38. On or about August 16. 2023. Lindsey Papa. Heinz' Manager. HR Supply Chain Ops ("Papa") and Harmon called Mitchell into a meeting.

39. On information and belief. Papa does not reside in Ohio and does not work out of Heinz' Fremont facility.

40. Papa questioned Mitchell regarding whether he had been clocking in and out for work on Heinz' time clock.

41. Mitchell replied that as a salaried employee. Heinz' rules did not require him to clock in and out.

42. Papa then accused Mitchell of having unexcused absences from work.

43. Papa expressly based this allegation on her claim that Heinz' computer system did not show Mitchell as having swiped his badge to enter the facility on certain days.





44. Mitchell informed Papa that the computer system which registered badge swipes at Heinz' Fremont facility was not working on the days in question.

45. Mitchell further informed Papa that, as confirmation of his work attendance and presence in the facility on the days in question. Mitchell signed in and out of the facility on a paper logbook.

46. Mitchell then provided Papa and Harmon a sample of his signature for them to check against the logbooks.

47. Finally. Papa asked Mitchell about his "premium pay" and Saturday and Sunday timesheets.

48. Mitchell was unfamiliar with the term "premium pay".

49. Confused with Papa's inquiry. Mitchell explained to Papa the payment terms under which Heinz had hired Mitchell.

50. At the end of the meeting. Papa suspended Mitchell for 8 days.

51. After suspending Mitchell. Papa had Harmon walk him out of the facility.

52. This meeting. and Mitchell's suspension. took place a little more than a week after the Whistleblower Report.

53. Four days later. Papa and Harmon called Mitchell to ask Mitchell about a particular day in May when Mitchell did not show up for work.

54. Mitchell responded that the day in question was Memorial Day. a federal holiday commemorating members of the US Armed Forces who died while in uniform.

55. Heinz Fremont facility was closed for Memorial Day.

56. Neither Heinz. nor Mitchell's supervisors, had required Mitchell to show up for work on Memorial Day.

57. On August 24, 2023, Papa and Harmon terminated Mitchell's employment with Heinz.





58. Papa and Harmon justified terminating Mitchell's employment on the basis of alleged "payment discrepancies" and Mitchell alleged ineligibility for "premium pay" (the "Pretext").

59. The Pretext no basis in fact.

60. In contradiction to the Pretext. Heinz paid Mitchell in keeping with the compensation plan Mitchell negotiated with Gomez prior to his hiring by Heinz.

61. In contradiction to the Pretext. Heinz paid Mitchell's last check. which was paid after Mitchell's termination. in keeping with the timesheets Mitchell had submitted.

62. Mitchell was terminated in retaliation for his Whistleblower Report. which exposed a potentially deadly threat to public health at his worksite.

63. As a result of Defendant' unlawful conduct. Mitchell has suffered and continues to suffer damages.

**COUNT I: WRONGFUL TERMINATION IN VIOLATION OF OHIO WHISTLEBLOWER STATUTE R.C. § 4113.52.**

64. Mitchell restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

65. On or about August 8, 2023, Mitchell made the Whistleblower Report. informing Heinz both verbally and in writing about the borescope findings showing that defects in the pipe design between the homogenizer and lines 6 and 8 was allowing dangerous micros to grow therein.

66. The "micros" in lines 6 and 8 included substances like listeria that could cause death or severe illness.

67. The "micros" in lines 6 and 8 were a threat to public health.

68. Mitchell reasonably believed that Heinz failure to rework the pipes between the homogenizer and lines 6 and 8 was causing the growth of micros that were causing a threat to public health.







69. Heinz retaliated against Mitchell for his Whistleblower Report by terminating Mitchell's employment.

70. Heinz' termination of Mitchell violated R.C. § 4113.52.

71. As a direct and proximate result of Heinz' conduct, Mitchell suffered and will continue to suffer damages.

**COUNT II: WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY. (Pled In The Alternative).**

72. Mitchell restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

73. A clear public policy exists and is manifested in Ohio statutes and administrative regulations, requiring the protection and preservation of public health in such circumstances as existed at Heinz' Fremont facility, including statutes that follow.

74. R.C. 3781.06(A)(1) states that "[a]ny building that may be used as a place of [...] trade, manufacture, [...], and all other buildings or parts and appurtenances of those buildings erected within this state, shall be so constructed, erected, equipped, and maintained that they shall be safe and sanitary for their intended use and occupancy."

75. R.C. 3703.01(A) states that "the division of industrial compliance in the department of commerce shall (1) Inspect all nonresidential buildings within the meaning of section 3781.06 of the Revised Code; (2) Condemn all unsanitary or defective plumbing that is found in connection with those places; (3) Order changes in plumbing necessary to insure the safety of the public health."

76. R.C. 3715.01(A)(10) defines "Contaminated with filth [to apply] to any food, drug, device, or cosmetic that has not been protected as far as may be necessary by all reasonable means from dust, dirt, and all foreign or injurious substances."







77. R.C. Chapter 3715 goes on to describe how the State of Ohio regulates food production so as to prevent the adulteration of food or its contamination with filth.

78. "Protection and preservation of public health are among the prime governmental concerns and functions of the state as a sovereignty." *State ex rel. Mowrer v. Underwood*, 137 Ohio St. 1, 3-4, 27 N.E.2d 773 (1940).

79. Mitchell, in good faith, reported a defect in plumbing at Heinz' Fremont facility which caused a threat to public health as a result of the contamination and adulteration of a food product.

80. Heinz' termination of Mitchell jeopardizes these public policies.

81. Heinz' termination of Mitchell was motivated by conduct related to these public policies.

82. Heinz had no overriding business justification for terminating Mitchell.

83. As a direct and proximate result of Heinz' conduct, Mitchell has suffered and will continue to suffer damages.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Brandon Mitchell requests judgment in his favor against Defendant, Kraft Heinz Foods Company (LLC) containing the following relief:

(a) An order directing Defendant to place Mitchell in the position he would have occupied but for Defendant's unlawful treatment of him, as well as to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices and other unlawful conduct are eliminated and do not continue to affect Mitchell;

(b) An award of damages in an amount to be determined at trial, but in excess of $25,000.00, plus prejudgment interest, to compensate Mitchell for all monetary and/or economic damages, including, but not limited to, the loss of past and future income, wages, compensation, job security and other benefits of employment;

(c) An award of damages for any and all other monetary and/or non-monetary losses suffered by Mitchell in an amount to be determined at trial, but in excess of $25,000.00, plus prejudgment interest;





(d) An award of costs that Mitchell has incurred in this action, as well as Mitchell'ss reasonable attorneys' fees to the fullest extent permitted by law; and

(e) Awarding such other and further relief that this Court deems necessary and proper.

Respectfully submitted,

Richard F. Protiva (0095272)
Chris P. Wido (0090441)
**THE SPITZ LAW FIRM, LLC**
25825 Science Park Dr., Suite 200
Beachwood, OH 44122
Phone: (216) 291-4744
Fax: (216) 291-5744
Email: Richard.protiva@spitzlawfirm.com
chris.wido[illegible]

*Attorneys For Plaintiff*

**JURY DEMAND**

Plaintiff Brandon Mitchell demands a trial by the maximum number of jurors permitted.

Richard F. Protiva (0095272)



